## A04A1159. HEARD v. THE STATE.
(603 SE2d 69)

ELDRIDGE, Judge.

A jury convicted Willie Heard of burglary with the intent to commit theft, public indecency, and obstruction of an officer (misdemeanor). Heard appeals from the denial of his motion for new trial. He enumerates as error the sufficiency of the evidence as to his convictions for burglary and public indecency. Heard argues that, as to these two offenses, the State failed to prove his identity. Finding no error, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia,* [443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.

(Footnotes omitted.) *Phagan v. State,* 243 Ga. App. 568, 569-570 (2) (533 SE2d 757) (2000).

Viewed in this light, the evidence showed that in the early morning hours of October 4, 2000, Tomeyca Grier was asleep in her bedroom. Before going to bed, Grier left her bedroom window cracked open about an inch. A screen was on the window and, on the inside, the window was covered with blinds and a valance. A sheet hung between the window and the blinds to help keep out the sunlight. Grier testified that when she went to sleep the sheet and blinds were flat against the inside of the window.

In the early morning hours, Grier awoke. The sheet and blinds that covered the window were laying over the back of the recliner which sat in front of the window. When Grier went to the window, she realized it was no longer cracked opened but raised all the way up. When Grier looked out the window, she saw the screen laying on the ground and to her left, a shadow against the wall. Grier put her hand out the window and realized it was a person when she touched the person's chest. Grier testified that the person was leaning against the outside wall of her apartment. When Grier touched the person's chest, the person slapped her in the face.

Grier thought that someone she knew was playing a trick on her and asked who was there. The person started backing up and after two or three steps was illuminated in her neighbor's porch light. Grier testified that in the porch light she was able to tell that the person was a black male. She further testified that the man was naked and that she was able to see the outline of his face and the side of his face. She went on to testify that the man had a "light" Afro, as if his hair had not been cut for two or three weeks and that he had a big stomach. Grier testified that she got a good look at the man for two or three seconds before she slammed down the window. Grier called the police. After calling the police, Grier called a friend to come over to her home.

Warrenton police officers Keith Banks and Ron Sellers responded. One of the officers drove down Culpepper Street, while the other drove down Highway 80, where the apartments Grier lived in were located. The officers testified that this was due to the fact that there were numerous paths which connected the two streets and often people involved in criminal activity would walk through the woods to the other street to avoid police detection. Officer Banks testified that, as he drove down Highway 80, he had his flashlight aimed at the field located about 20 feet from Grier's apartment and that he saw a man lying on the ground in white shorts and no shirt. When the light hit the man, he ran into the nearby woods toward Culpepper Street. Officer Banks radioed this information to Officer Sellers. Officer Banks stopped his car and attempted to follow the fleeing suspect on foot.

As Officer Banks entered the woods, he saw Heard lying on the ground in the same area the man in the white shorts had run. Heard

was clothed in dark pants and an orange shirt. Officer Banks ordered Heard to get up and come out of the woods. Heard ran away from Officer Banks toward Culpepper Street. Officer Banks again radioed Officer Sellers with this information. After receiving Officer Banks' calls, Officer Sellers started walking through the backyards of the houses on Culpepper Street toward the area near the woods. Officer Sellers testified that he could hear someone running through the woods. Officer Sellers crouched behind a lawnmower and saw Heard, who was wearing jeans and an orange shirt, run out of the woods.

Officer Sellers shined his flashlight on Heard, identified himself as a police officer, and ordered Heard to stop. Heard continued to run. Officer Sellers found Heard hiding on the ground by a house in an area where the house, a hedge, and the steps came together to form a "box." Initially, Heard refused to comply with Officer Sellers' command to stand up and show his hands. On Officer Sellers' second command, Heard stood up, showed his hands, and said "something to the effect you're going to have to shoot me," and started walking toward the officer. Thinking Heard was going to run, Officer Sellers sprayed Heard in the face with pepper spray. Heard started running, and Officer Sellers sprayed Heard a second time with pepper spray. At this point, Heard fell to the ground, and Officer Sellers was able to place Heard in handcuffs. When placing Heard under arrest, Officer Sellers noticed that Heard's white tennis shoes were untied.

Officers Banks and Sellers took Heard to the City Hall, which was located nearby, to wash the pepper spray out of his eyes. While the officers were washing out Heard's eyes, Grier drove up with her friend Maurice. Grier identified Heard as the man she saw outside her window. At trial, Grier testified that she was "without a shadow of doubt in my mind" that Heard was the man she saw outside her window. At the jail, as Heard undressed to shower and change into the required orange jumpsuit, Officer Sellers testified that he observed Heard as he took off his pants. Heard was wearing white boxer shorts that came just above his knees.

Evidence of a similar transaction was placed into evidence. In the similar transaction case, the victim, before going to bed, left her screened window cracked about three or four inches. Upon waking in the middle of the night, the victim found the window completely open with the screen missing. As in the present case, upon looking out the window, the victim saw the figure of a person pressed up against the outside wall. The victim's purse, which she had left in a chair near the window, was missing. When police responded, they found impressions of footsteps and circles, consistent with the imprints a person on crutches would make, on the ground outside the victim's bedroom window. The officers remembered seeing a man on crutches walking across the street as they pulled up to the victim's home. Further

investigation showed the man to be Heard. The victim's cigarette pouch, which had been in her stolen purse, was found on the side of the road where officers had first seen Heard. The victim's chapstick and lucky coin, both of which had been in her stolen purse, were found in Heard's pockets. *Held*:

We find the evidence recounted above amply supports Heard's convictions under the standard of *Jackson v. Virginia*, supra. While Heard contends that Grier's testimony that he was the naked person Grier saw outside her window was not credible because it was dark and Grier only saw the profile of the perpetrator for two or three seconds, Grier was emphatic both before trial and at trial in her identification of Heard as the naked man she saw outside her window.

Identity is a question for the trier of fact, and where a witness identifies a defendant (whether the identification be based on the defendant's eyes, clothes, hairline or some intangible factor not capable of description), the credibility of the witness making such identification is not to be decided by this court.

(Citations and punctuation omitted.) *Wimberly v. State*, 233 Ga. 386, 387 (3) (211 SE2d 281) (1974).

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED JULY 26, 2004.

*Harold A. Hinesley*, for appellant.

*Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney*, for appellee.